Wis.]        AUGUST TERM, 1898.        473

Cotzhausen vs. H. W. Johns Mfg. Co. of New Jersey.

COTZHAUSEN, Respondent, vs. H. W. JOHNS MANUFACTURING COMPANY OF NEW JERSEY, Appellant.

*September 2 — September 20, 1898.*

*Contracts: Parties: Deceit: Corporations: Consolidation: Assumption of obligations.*

1. A third person who, by false representations, induces a person to enter into a contract with another, does not thereby become a party to such contract so as to be liable in an action thereon, although he may, perhaps, be liable in tort for damage resulting from his deceit.
2. A corporation formed by the consolidation of several others does not, by assuming all their debts, obligations, and contracts, render itself liable for a tort theretofore committed by one of them.

APPEAL from a judgment of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Reversed.*

The complaint in this action charged that the defendant is a New Jersey corporation, organized in June, 1891, and is a consolidation of a number of corporations previously existing, among which was the H. W. Johns Manufacturing Company of New York, and that the defendant company assumed all the debts, obligations, and contracts of the previous corporations which were consolidated to form the defendant; that in the year 1889 the plaintiff was erecting a business block in Milwaukee, and invited bids for roofing the same, and received a written proposal from one Phillip Gross, of Milwaukee, then the agent of the H. W. Johns Manufacturing Company of New York, who proposed, *in behalf of said company,* to construct the roof known as the "H. W. Johns asbestos roof," manufactured by said company under a patent, for five dollars a square; that the plaintiff at first rejected said bid, but that the H. W. Johns Manufacturing Company of New York, by its Chicago agents and the said Gross, made repeated representations to the plaintiff as to

the good qualities of the H. W. Johns roof (which representations are fully set forth in the complaint, but are not necessary to be repeated here), and that the plaintiff finally, by means of such representations and relying thereon, changed his mind and accepted said bid for the asbestos roof of said company, the price being reduced to $4.75 per square. The complaint further alleges that the roofing was done in the summer and fall of 1890, and was entirely paid for in November, 1891, but that the roof proved to be worthless, and entirely failed in the winter of 1894, and that the representations, assurances, and warranties of said H. W. Johns Manufacturing Company of New York, and its then agents, as to the character, quality, and durability of the material employed, utterly failed, so that an entirely new roof had to be put upon the building, and that by reason of the premises the plaintiff was damaged to the amount of $2,000, for which he prayed judgment.

The answer denied that the H. W. Johns Manufacturing Company of New York ever made the contract set forth in the complaint, and denied that Phillip Gross was at any time the agent of said company, and alleged that the roofing contract set forth in the complaint was entered into between the plaintiff and Gross upon his own account.

Upon the trial of the action it appeared that Phillip Gross in September, 1889, was engaged in business in Milwaukee, and had the exclusive right to sell and use the asbestos roofing manufactured by the H. W. Johns Manufacturing Company of New York, but was not the agent of said company for the purpose of making contracts to put on roofing, and that on the 6th of September he made a written bid to the plaintiff on his own account to furnish and lay complete an H. W. Johns asbestos roof for five dollars per square upon the plaintiff's building.   It further appears that in the latter part of April, 1890, the H. W. Johns Manufacturing Company of New York transferred the exclusive right to use and

sell their roofing in Milwaukee to Messrs. A. Monsted & Co., and that the further negotiations had with regard to the roofing were had with Monsted & Co., and resulted in the making of the following written contract on the 5th of August, 1890:

"Messrs. A. Monsted & Co. agree to place the asbestos roof on Metropolitan Block, furnishing all necessary material, in first-class manner, at $4.75 per square. Work must be commenced within twenty-four hours after roof is in readiness, and finished without any unreasonable delay.

"F. W. von Cotzhausen.
"A. Monsted & Co."

Prior to the making of this contract, one Near, a traveling salesman of the H. W. Johns Manufacturing Company of New York, had called on the plaintiff with Monsted & Co., and left with the plaintiff circulars commending the H. W. Johns roofing, and also made oral representations as to its character; but it did not appear that either Near or Monsted claimed to act on behalf of the company in making contracts, nor did it appear that either of them was authorized to make any such contracts on behalf of the company.

The evidence further tended to show that the roof put upon the building by Monsted & Co. proved to be defective, and a special verdict was rendered in the action as follows:

"(1) Was the defendant company organized on or about the 25th of June, 1891, and did it begin business on or about the 1st day of July, 1891, and is it a consolidation of the following previously existing corporations, namely, the H. W. Johns Manufacturing Company of New York, organized in 1887, the Asbestos Packing Company of Boston, the Calmer-Spence Company of New York, C. W. Trainer & Co. of Boston, and the Shields & Brown Company of Chicago? Answered, 'Yes,' by consent of counsel.

"(2) Did the defendant company then assume all the debts, obligations, and contracts, of every kind and nature, of each of the pre-existing companies aforesaid, including the obliga-

tion, if any, which is the subject matter of this action? Answered by jury, 'Yes.'

"(3) Did the plaintiff and the firm known as 'A. Monsted & Co.,' on or about the 5th day of August, 1890, make and sign a writing offered in evidence in this action, and marked 'Exhibit No. 1,' whereby the said A. Monsted & Co. undertook to cover the plaintiff's building with a so-called asbestos roof, and was said writing signed by said A. Monsted & Co. and by the plaintiff? Answered, 'Yes,' by consent of counsel.

"(4) Prior to the making of said writing, did the defendant corporation, or its predecessor, the H. W. Johns Manufacturing Company of New York, or either of them, make to the plaintiff the representations set forth in that behalf in the plaintiff's complaint, and contained in Exhibit No. 3, in evidence in this action? To this question the defendant objected, for the reason that the question is not based upon the evidence and there is nothing in the case to support an affirmative answer to said question; which objection was overruled by the court, and the defendant duly excepted. Answered by jury, 'Yes.'

"(5) Did the plaintiff believe said representations to be true? Answered by jury, 'Yes.'

"(6) Was the plaintiff induced by said representations to make and sign the writing or memorandum aforesaid with A. Monsted & Co.? Answered by jury, 'Yes.'

"(7) At the time of the making of said writing by and between the plaintiff and the said A. Monsted & Co., had said A. Monsted & Co. the exclusive right to purchase and sell and use in the city of Milwaukee the roofing material made and sold by the defendant corporation, or its predecessor, the H. W. Johns Manufacturing Company of New York, the asbestos roofing which was intended to be described in said contract or memorandum, and which was in fact used in the execution of said contract or memorandum? Answered 'Yes,' by consent of counsel.

"(8) Did said A. Monsted & Co. proceed under said con-

tract or memorandum to roof the plaintiff's building afore-
said with the material so intended to be used for that
purpose, according to the true intent and meaning of said
contract or memorandum, in good faith and in a good and
workmanlike manner?   Answered by jury, 'Yes.'

"(9) Did said roof turn out to be utterly useless as a roof,
solely through the defects and worthlessness of said material
as a roofing material?   Answered by jury, 'Yes.'

"(10) If you answer the last interrogatory in the affirma-
tive, was either the plaintiff or the said A. Monsted & Co.
guilty of any fault or misconduct, or want of care or skill,
which was the proximate cause of the failure of said roof?
Answered by jury, 'No.'

"(11) Were the representations contained in said Exhibit
No. 3 substantially false?   Answered by jury, 'Yes; in this
action.'

"(12) Do you find for the plaintiff or for the defendant?
Answered by jury, 'Plaintiff.'

"(13) If the court should be of the opinion that the plaint-
iff is entitled to judgment, in what sum do you assess the
plaintiff's damages suffered by reason of said representa-
tions so made by the defendant corporation, or its prede-
cessor, the H. W. Johns Manufacturing Company of New
York, to the plaintiff?   To this question the defendant ob-
jected, for the reason that the question assumes that the
plaintiff suffered damages by reason of the representations
made by defendant to plaintiff, and suggests to the jury
that the defendant has made false representations to the
plaintiff, and that the plaintiff ought to recover; which ob-
jection was overruled by the court, and the defendant duly
excepted.   Answered by jury, '$1,211.82.'"

Upon this verdict judgment was rendered for the plaint-
iff, and the defendant appeals.

For the appellant there was a brief by *Felker, Doe & Fel-
ker,* and oral argument by *J. B. Doe.*   They argued, among

other things, that the action could not be maintained because it was an action on contract for breach of warranty, when there was no contractual relation between the parties. 28 Am. & Eng. Ency. of Law, 740; *Rose v. Hurley*, 39 Ind. 81; *Peek v. Gurney*, 6 Eng. & Ir. App. Cas. 377; *Longmeid v. Holliday*, 6 Exch. 761; *Barnes v. Deliglise*, 78 Wis. 628; *Winterbottum v. Wright*, 10 Mees. & W. 109; *Langridge v. Levy*, 2 id. 519; *Levy v. Langridge*, 4 id. 337; *Blakemore v. B. & E. R. Co.* 92 Eng. C. L. 1035; *Burton v. Larkin*, 36 Kan. 246; *Austin v. Seligman*, 18 Fed. Rep. 519.

For the respondent there was a brief by *Sylvester, Scheiber & Orth*, attorneys, and *F. W. von Cotzhausen, in persona,* and oral argument by *Mr. Fred. Scheiber* and *Mr. Cotzhausen.*

WINSLOW, J.   It is very plain, from an inspection of the complaint, that this action was originally an action to recover damages for the breach of the warranties and representations contained in a contract to furnish and lay an asbestos roof on the plaintiff's building, which contract was alleged to have been made with the plaintiff, August 5, 1890, by the H. W. Johns Manufacturing Company of New York, through its Milwaukee agents, and to have been assumed by the defendant corporation upon its formation in June, 1891.   The evidence entirely failed to show that either Gross or Monsted & Co. were or claimed to be agents of the Johns Company, but showed that they were simply exclusive dealers in the Johns patent roofing in Milwaukee, and that Monsted & Co. made the written roofing contract with the plaintiff solely on their own behalf.   Such being the case, the trial court did not submit to the jury any questions upon the subject of this alleged agency, and so this contention disappears from the case.

It is now claimed, however, by respondent, that the action is still an action upon contract, and this contention is based upon the fact that one Near, who was a traveling salesman

for the Johns Company of New York, called on the plaintiff, with Gross and Monsted, and made oral representations and presented printed circulars, as to the merits of the Johns patent roofing, which were false, but which were relied on by the plaintiff, and induced him to enter into the contract with Monsted & Co. These facts, it is said in respondent's brief, constituted a contract on behalf of the Johns Company to the effect that, "if you will give our roofing the preference over others and intrust Monsted with the execution of the work, then we, the H. W. Johns Company, agree and undertake that the material furnished and employed shall in all respects conform to our representations, and possess the characteristics claimed for it by writing and parol, and, in case of breach, to make good to you the loss thereby sustained." It is entirely clear, however, that but one contract was made, and that was the written contract between the plaintiff and Monsted & Co. If, by false representations, a stranger induces two persons to enter into a contract, such stranger does not *thereby* become a party to the contract. He may perhaps become liable in tort if damage results to the contracting party who is induced to make the contract relying on the false representations, but he is not liable in an action upon contract, for the very plain reason that there were no contractual relations between the parties. No contract between the plaintiff and the Johns Manufacturing Company was even attempted to be made.

There being no contract shown except with Monsted & Co., there can be no recovery against the defendant upon the ground of a breach of contract. Even if it were possible to convert the action into a tort action, there can be no recovery against the defendant, because it was not in existence at the time of the commission of the tort, and has never assumed any liability therefor.

*By the Court.*— Judgment reversed, and action remanded for a new trial.